## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**CHERIE HOLT**                                                              **PLAINTIFF**

**VS.**                          **No. 4:22-cv-00630 BRW/PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
    **Social Security Administration**                          **DEFENDANT**

## FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District
Judge Billy Roy Wilson.  You may file written objections to all or part of this
Recommendation.  If you do so, those objections must: (1) specifically explain the
factual and/or legal basis for your objection; and (2) be received by the Clerk of this
Court within fourteen (14) days of this Recommendation.  By not objecting, you may
waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Cherie Holt ("Holt") appeals the final decision of the Acting Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Holt maintains the Administrative Law Judge ("ALJ") erred: (1) by failing to include manipulative limitations within the residual functional capacity ("RFC") evaluation; (2) by failing to provide a sufficient rationale for rejecting her testimony, as required by SSR 16-3p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984); and (3) by failing to address the supportability of consultative examiner Dr. Carrie Fendley ("Fendley"), as required under 20 C.F.R. 404.1520c(b)(2). The parties have ably summarized the testimony given at the June 9, 2021, telephonic administrative hearing. (Tr. 29-52). The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from March 1, 2020, the amended alleged onset date, through September 29, 2021, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ, Holt stated she was 51 years old, 5'5", weighed 230, is right handed, and had a ninth grade education. Holt described past relevant work as a press operator, hand packager, fiberglass tooler, and

cleaner/housekeeper.  She resides with a friend who supports her.

She identified physical impairments including problems stemming from an injury in 2016 in which her right index and middle fingers were crushed.  She reported the accident  resulted in the amputation of a digit on the index finger.  In 2017, Holt underwent carpal tunnel release surgery on her right hand with the goal of restoring feeling.   Holt stated the surgery was ineffective and she experiences "severe numbness" and "can't grip or hold anything."  (Tr. 39).

 Holt also reported she tested positive for rheumatoid arthritis in October 2020 and was prescribed Methotrexate, which "may have helped a little bit." (Tr. 40).  She indicated she felt the effects of the rheumatoid arthritis in her hips, back, and shoulders, causing walking and standing problems.  Holt stated she uses a cane (not prescribed)  "when I need to."  (Tr. 40).  Other medications taken by Holt were Gabapentin, Meloxicam, and Hydrocodone.  Holt cited fatigue as a side effect from the Gabapentin, and said she takes a daily nap.  She had not received injections for her hips or back, nor had she done physical therapy.  An MRI of her left shoulder had been performed.

Holt testified her asthma and COPD were being treated with Albuterol (used three times daily) and Symbicort.  She was diagnosed with fibromyalgia and attempted some physical activity to address the issue "but it just seems not to work."

3

(Tr. 43).

Although Holt had not received formal mental health care, her primary care physician prescribed Diazepam, an antidepressant.  She testified that "[a] lot of things get me down."  (Tr. 43).  Holt stated she participated in no social activities, and was capable of driving but did not "drive much."  (Tr. 43).

On further questioning by the ALJ, Holt stated her rheumatoid arthritis factor was over 600 when diagnosed (Holt did not know her current factor), that no back brace had been prescribed, and that a recent x-ray of her neck reflected "slippage." (Tr. 46).

William Elmore ("Elmore"), a vocational expert, testified.  After reviewing Holt's past relevant work, the ALJ asked Elmore to consider a hypothetical worker of Holt's age, education, and experience who could perform the full range of light work with no mental limitations.  Elmore testified that such a hypothetical worker could perform the past job of fiberglass tooler (as described in the *Dictionary of Occupational Titles*, but not as described by Holt) and the past job of cleaner, housekeeper.  In addition, Elmore cited other jobs such a worker could perform, including cashier II, price marker, and offset press operator II, all of which require the use of both hands.  In response to a second hypothetical question, Elmore testified no jobs would be available to a worker restricted to less than sedentary work, needing a

4

sit/stand option, unable to grasp, handle, and finger with her right hand, unable to maintain attention and concentrate or meet normal attendance, punctuality, and production requirements, with mental limitations (e.g., limited interpersonal contact, simple supervision).  (Tr. 47-52).

*ALJ's Decision:*

In his September 29, 2021, decision, the ALJ determined Holt had the severe impairments of osteoarthritis and inflammatory arthritis.  The ALJ  identified other impairments as not severe, including asthma, obesity, depression, neck pain, left shoulder pain, bilateral hip pain, and lower back pain.  The ALJ noted Holt's obesity had not been addressed by an acceptable medical source, and there was no evidence of limited functioning secondary to obesity.

In deeming Holt's allegation of depression to be non-severe, the ALJ considered the four broad areas of functioning found in 20 C.F.R., Part 404, Subpart P, Appendix 1, finding Holt had no limitation in three of the four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) adapting or managing oneself.  The ALJ determined that Holt had a mild limitation in concentrating, persisting, or maintaining pace.

The ALJ found that Holt did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1,

specifically considering Listing 14.09 (inflammatory arthritis).

The ALJ determined that  Holt had the RFC to perform light work with  no postural or manipulative limitations.  The ALJ assessed Holt's subjective allegations expressed at the hearing and in her function report, finding her statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20).

The ALJ summarized the medical evidence with regard to Holt's osteoarthritis and her diagnosis of rheumatoid arthritis in October 2020, when she had an elevated rheumatoid factor of greater than 600.  He detailed the examination findings and subsequent treatment from the initial diagnosis through April 2021, including the various prescription drugs taken by Holt.

The ALJ also reviewed the October 2020 opinion offered by consultative examiner Fendley.  Fendley opined Holt had limitations in sitting, standing, and walking, and required frequent breaks due to joint pain.  She also found she had limitations in lifting and carrying on her right side due to numbness in her right hand causing her to drop items.   The ALJ did not adopt Fendley's assessment "because it is internally inconsistent with the benign physical findings found at that time." (Tr. 21).  In addition, the ALJ cited records showing a good response to medication and reduced disease activity subsequent to Fendley's examination.  The ALJ found the

opinions of state agency psychological examiners (who opined Holt's depression was non-severe) persuasive because they were consistent with the consultative examination and the record as a whole.  Similarly, the ALJ found the opinions of the state agency physicians (who opined Holt could perform the full range of light work) persuasive.

The ALJ concluded Holt was capable of performing her past relevant work as a fiberglass tooler and as a cleaner/housekeeper.   In the alternative, the ALJ relied upon Elmore's testimony to find Holt could perform other jobs – cashier II, price marker, and offset press operator II.  Accordingly, the ALJ determined that  Holt was not disabled.  (Tr. 15-24).

*Medical Evidence*

Holt's medical records shed light on her finger problems as well as her back and shoulder pain.

With regard to finger issues, the medical records document her treatment by Dr. Richard S. Wirges ("Wirges") following an on-the-job injury on November 2, 2016. The injury was described as a "crush injury" to the tips of her right index and long fingers on her right hand.  Wirges wrote that the injury might "possibly even need for amputation of the tips" of these fingers.  (Tr. 345).  Wirges operated on Holt on November 8, recording the following results:

7

1.   Right index finger incision and drainage with debridement of skin, soft tissue, nail bed and nail plates.
2.   Right long finger incision and drainage with debridement of skin, soft tissue, nail bed and nail plate.
3.   Closed reduction of right long finger distal phalanx fracture.
4.   Closed treatment of the right index finger distal phalanx fracture.
5.   Right long finger nail plate removal.
6.   Right long finger nail bed repair, 1 cm.
7.   Right index finger nail plate removal.
8.   Digital block, right index finger.
9.   Digital block, right long finger.
10.  Aluminum splint, right index finger.
11.  Aluminum splint, right long finger.

(Tr. 347).[1]  Wirges cautioned that Holt might not "get all her sensation and function back.  She may not get all her motion or strength back. . .  Her nails may not come back as normal . . . [t]he bone may not fully heal."  *Id.*  Three and a half weeks after the surgery, Holt was evaluated for physical therapy, and it was recommended she be seen 2-3 times a week for 12 weeks.  Short and long term goals were set, including a long term goal to increase her active range of motion "in all restricted planes to improve overall mobility status and functional activity" and to increase grip and pinch strength to within 25% of her unaffected hand in 10-12 weeks. (Tr. 376).  These long term goals were consistent with Wirges' prediction that Holt might not regain all of her motion and strength.   The treating physical therapist, Ashley Eldridge ("Eldridge"), assessed Holt's wounds on December 2, 2016, finding they were

---

[1] The surgery summary does not record an amputation.

completely closed/healed, with some stiffness in the fingers, some slight hypersensitivities, normal size, and good vascular flow. Eldridge noted that Holt was not to use the right hand and was warned that her nicotine use hindered the healing process. (Tr. 380). About one month later, Eldridge found Holt's wounds completely healed, but only minimal improvement in the distal interphalangeal joints (the finger joints closest to the tips of fingers). Eldridge documented that "work wise she may start a 5 pound limitation and take breaks as needed due to sensitivities." (Tr. 373). In April 2017, Eldridge recorded that Holt had not returned to work and that she was limited to one-hand duty due to possible nerve issues in her hand. In May 2017, Wirges performed a nerve conduction study, and opined that the crush injury caused Holt to develop carpal tunnel syndrome ("CTS"). CTS release surgery was performed in June 2017. When Wirges followed up with Holt in late July, six weeks after CTS release, he warned her that her hand "may not be the same as it was prior to the injury." (Tr. 357). Wirges also indicated the need for some therapy, writing "I see no long-term restrictions" and estimating Holt's return to "normal activities" in 1-2 months. (Tr. 357). All of the medical treatment concerning Holt's fingers and CTS predates the onset date of March 1, 2020.

Holt's treatment for shoulder pain began in December 2018. An October 2019 MRI revealed low-grade rotator cuff tendinopathy and possible arthritis. When seen

by Dr. Inge R. Carter ("Carter") in June 2019 for left shoulder pain, her range of motion was decreased in her left arm due to pain but otherwise normal.  Her grip strength was measured as 90% on left hand, 100% on right hand.  (Tr. 399). Following the October 2019 MRI noted above, Dr. Ethan Shock ("Shock") saw "no clear indication for surgical intervention at this time."  (Tr. 409).  Shock recommended a home exercise program and saw no need for follow up.

Holt was seen by Carter again in August 2020, during the relevant period for disability purposes.  She complained of shoulder and back pain.  Carter's examination found decreased range of motion in her back and left shoulder, grip strength of 4/5 in left hand, 5/5 in right hand, and decreased sensation in her left hand.

In October 2020, Holt was seen by consultative examiners.  Mike Parker, Ph.D., ("Parker"), performed a mental diagnostic evaluation on October 2, identifying Holt's problems as major depressive disorder (recurrent and mild),  morbid obesity, COPD, arthritis, deteriorating bone disease, unemployment, and financial concerns.  He noted that Holt described herself as fully capable of performing all basic and complex activities of daily living, including household tasks, counting money, making change, paying bills, and going shopping.   Parker concluded that Holt was capable of coping with the typical mental/cognitive demands of basic work-like tasks, and able to attend and sustain concentration on basic tasks.  (Tr. 491-497).

Fendley performed a physical consultative examination on October 10, 2020. Her examination determined that  Holt suffered from pain in her joints or muscles, joint stiffness, paresthesias of her right hand, and motor weakness of her right hand. Holt was able to perform a straight leg raise in seated and supine positions, hold a pen and write, touch fingertips to palm, oppose thumb to fingers, and pick up a coin.  She had normal range of motion in her cervical spine, lumbar spine, shoulders, elbows, wrists, hips, knees, ankles, and great toe.  She also had a normal gait and station. Fendley noted decreased range of motion in Holt's right hand MCP joints (45 out of 90), PIP joints (50 out of 100), and DIP joints (35 out of 70).[2]  Fendley assessed Holt with chronic joint pain and numbness of the right hand with decreased grip strength. Fendley opined that Holt could sit and stand but must have frequent breaks due to joint pain; and could walk frequently but must have frequent breaks due to joint pain. She also found that numbness in Holt's right hand would limit her ability to lift and carry on the right side, and she would frequently drop things carried in her right hand. (Tr. 500-507).

*Holt's First Claim – the ALJ failed to include manipulative limitations within the RFC.*

---

[2]

As previously noted, the DIP joint is closest to the fingertips.  The PIP joint is the next joint away from the fingertips, and the MCP joint is the next joint away from the PIP, at the intersection of the upper portion of the palm and the base of the finger.

Holt points to her allegations in her application, her testimony at the hearing, her treatment in 2016 and 2017, and Fendley's findings as evidence of her need for manipulative limitations.  This evidence fails to establish error by the ALJ in omitting manipulative limitations.  Holt's allegations in the application and her testimony at the hearing will be addressed more fully under her second claim.  Suffice it to say that an ALJ is not obliged to fully accept a claimant's allegations.  The medical records from 2016 and 2017 predate the relevant period, and the absence of treatment after this period is significant, as are findings nearer to or in the relevant period which are counter to Holt's subjective statements.[3]  Fendley's opinion will be addressed in more detail under Holt's third claim.  In summary, the evidence submitted by Holt does not demonstrate error by the ALJ in neglecting to include manipulative limitations in the RFC.  There is no merit to claim one.

*Holt's Second Claim – ALJ error by failing to provide a sufficient rationale for rejecting her testimony.*

---

[3]

Carter, in June 2019, rated Holt with 100% grip strength in her right hand.  Shock, in October 2019, recommended home exercise and no follow up.  Carter, in August 2020, rated Holt's right grip strength as 5/5.  And Fendley, though finding some limitations, also found Holt able to hold a pen and write, touch fingertips to palm, oppose thumb to fingers, and pick up a coin.

The RFC determination is erroneous, according to Holt, because the ALJ improperly evaluated her subjective complaints. Holt asserts that the ALJ "discounted [her] subjective complaints based on the medical evidence alone" rather than analyzing other necessary factors. *Plaintiff's brief*, page 11. The parties agree that SSR 16-3p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) set forth the relevant factors:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 16-3p. The ALJ is not required to explicitly discuss each relevant factor. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

While Holt is correct that emphasis was placed on the objective medical evidence, the ALJ considered more than the objective medical evidence and opinions in evaluating her subjective statements. For example, the ALJ considered Holt's testimony and reports of daily activities. Holt reported to her treating physician in October 2020 an ability to perform activities of daily living, climb stairs, exercise, get

in and out of a car, and walk an unlimited distance.  (Tr. 443).[4]  That same month, Holt reported to consultative examiner Parker that "she was fully capable of performing all basic and complex ADLs and other daily chores and tasks."  (Tr. 496). The ALJ  permissibly considered Holt's activities of daily living, as well as any inconsistency between her activities as reported to medical providers and her testimony at the hearing.[5]

Similarly, the ALJ's observation that Holt had improved with treatment was proper.  The ALJ cited the diagnosis of rheumatoid arthritis in October 2020 and the marked improvement since that time without requiring any intravenous infusions.  (Tr. 20).  The ALJ remarked that Holt was "currently showing very little rheumatoid arthritis disease activity."  (Tr. 20).  The ALJ also noted improvement in pain in November 2020 after pain prescriptions were given, and continued improvement in 2021, including a reduced amount of swelling in her legs.  In April 2021, Holt complained of fatigue but reported her swelling had improved significantly and "she

---

[4]

Holt reported the same abilities regarding daily activities in January and April 2021.  (Tr. 465-466, 471-472).  Her view of her abilities was not as optimistic in November and December 2020, when she stated she could not walk an unlimited distance (in December) and had difficulty with stairs, exercise, kneeling, and walking (in November).  (Tr. 436, 453-454).

[5]

Holt testified she used a cane, and the ALJ noted in his opinion the absence of any prescription for an assistive device.  (Tr. 19).

has been doing fairly well since her last office visit."  (Tr. 471).

As previously noted, an ALJ is not obligated to list and address every required factor.  *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).  And while the ALJ could have addressed more factors, he provided an adequate basis for his evaluation of Holt's subjective statements.  There is no merit to Holt's second claim.

*Holt's Third Claim – ALJ error by failing to address the supportability of a consultative examiner*[6]

Holt contends the ALJ failed to comply with the relevant regulations for evaluating medical opinion evidence when considering Fendley's October 2020 opinions.  (Tr. 500-507).

The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017.  Holt filed her claim in July 2020.  The new regulations eliminated the "long-standing 'treating physician' rule."  *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021).   The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer
> or give any specific weight, including controlling weight, to any medical

---

[6]

This third claim was raised in Holt's reply brief.  Docket entry no. 15.  Kijakazi was informed of her opportunity to address this argument.  Docket entry no. 18.

opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).

The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

See *Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion.  Holt claims that the ALJ "rejected the persuasiveness of [Fendley's] findings based on purported inconsistencies without addressing the supportability prong" as required by the regulations.  *Plaintiff's Reply Brief* at 1.

There is no merit to this argument.  The ALJ found Fendley's opinions unpersuasive because they were "internally inconsistent with the benign physical findings found at that time."  (Tr. 21).  The ALJ also cited the significant improvement Holt made in the months following Fendley's examination.  Holt's claim

is the ALJ did not address supportability.  He did.  A physician's own treatment notes are typically relevant to the supportability, not the consistency, of the medical opinion. *See. e.g., Dotson v. Saul*, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021); *Jarmon v. Kijakazi*, No. 4:21-CV-00032 BSM/JJV, 2022 WL 55494, at *3 (E.D. Ark. Jan. 5, 2022), report and recommendation adopted sub nom. *Jarmon v. Soc. Sec. Admin.*, No. 4:21-CV-00032-BSM, 2022 WL 1177362 (E.D. Ark. Apr. 20, 2022), aff'd sub nom. *Jarmon v. Kijakazi*, No. 22-2619, 2023 WL 2378523 (8th Cir. Mar. 7, 2023).  So, even though the ALJ used the word "inconsistent" in his decision, he was actually assessing whether Fendley's findings were in harmony with Fendley's opinion, which is fundamentally a supportability, not a consistency, consideration.  Although Holt does not challenge the reasoning of the ALJ in addressing supportability, the gap between her benign findings and her opinions is an acceptable rationale for discounting Fendley's opinions.[7]  *See Adair v. Saul*, 816 Fed.Appx. 26 (8th Cir. 2020) (opinion may be discounted if inconsistent with physician's notes).  The ALJ could find as he did with respect to the supportability of Fendley's opinions.

---

[7] As an example of the inconsistency between Fendley's notes and her opinions, she opined that Holt was limited in her ability to sit, stand, and walk, while her physical examination found Holt to have normal gait and station, normal tandem walking, normal heel walking, normal walking on toes, ability to squat and rise without difficulty, and normal range of motion in all categories except her right fingers.  (Tr. 500-507).

In summary, the Court finds the ultimate decision of Kijakazi was supported by substantial evidence.  The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion.  The test is whether substantial evidence supports the ALJ's decision.  *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is satisfied in this case

Accordingly, the Court recommends that the final decision of Kijakazi be affirmed and Holt's complaint be dismissed with prejudice.

IT IS SO RECOMMENDED this 17th day of April, 2023.

_____

UNITED STATES MAGISTRATE JUDGE